JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Malik Aziz ("appellant") appeals the trial court's decision finding him guilty of aggravated robbery, felonious assault and attempted murder. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part, reverse in part and remand for resentencing.
 I. {¶ 2} According to the facts, the victim, Dion Sellers ("Sellers"), testified that around 11:30 p.m. on February 22, 2003, he returned to where he had previously parked his vehicle with three of his friends and saw a leg hanging out of the open driver's door of his car. He and his three friends then walked up and questioned the man.
 {¶ 3} Sellers stood in the car doorway with Dwight Taylor ("Taylor") to his right side, Jamarr McLemore ("McLemore") behind Taylor and Erik Conner near the rear of the car. A male was attempting to steal the radio/CD player from the vehicle. When the men encountered the man, he was holding and disassembling the radio, which had a detachable face. Sellers bent down and asked the man if the car belonged to him, and the man replied affirmatively. Sellers then swung a full beer bottle he had in his possession at the man. Almost simultaneous to Sellers' actions, the man fired his gun at Sellers.
 {¶ 4} The first shot went through one of Sellers' coat sleeves but missed his arm. Additional bullets also shattered the driver's-side window, and went through Sellers' clothes but did not cause any bodily injury. After the perpetrator fired his gun, Sellers and his friends ran for cover. The perpetrator tried to escape to a Ford Aerostar van a short distance down the street. However, the ground had recently frozen and the wheels were unable to get traction and just spun, so the perpetrator fled on foot. Sellers immediately told a security guard what had happened and returned with the guard to McLemore's house, where 9-1-1 was called.
 {¶ 5} Cleveland police officer Jason Greenaway, on basic patrol at the fourth district, responded at about 11:55 p.m. Officer Greenaway ran the license plate on the Ford van and learned that it belonged to appellant and that it had not been reported stolen. At 2:42 a.m., police received a call from appellant stating that he wanted to report a car-jacking. He called from a pay phone and refused to have an ambulance sent, saying he was all right. The dispatcher asked that appellant wait for police officers to arrive, but he did not want to stay.
 {¶ 6} Appellant eventually went to the fifth district police station at about 4:30 a.m. At approximately the same time, Officer Greenaway was finishing his report at 4:50 a.m. at the fourth district when he heard a dispatch over the radio notifying him that appellant was at the fifth district claiming he had been car-jacked. Officer Greenaway immediately explained his investigation to the officer-in-charge ("OIC") at the fifth district station and learned that appellant was wearing a black pullover jacket.
 {¶ 7} Officer Greenaway told the OIC at the fifth district to detain appellant until he was able to get there, and fifth district personnel did so. Sergeant Mamone informed Officer Greenaway that appellant seemed erratic and deceitful with his comments. He stated that appellant's comments seemed more deceptive than those of a normal robbery victim, and he did not seem upset or panicked. Sergeant Mamone told Officer Greenaway that appellant's explanations were in conflict about where and when the alleged incident happened and how he ended up at the fifth district station instead of the fourth district station.
 {¶ 8} Approximately two or three days later, Sellers, McLemore, and Taylor were interviewed by a fourth district detective and were each shown a set of photographs.
 {¶ 9} The grand jury handed down a six-count indictment against appellant, alleging one count of aggravated robbery, four counts of felonious assault, and one count of attempted murder.[1] They amended four specifications to each count: notice of a prior conviction, a repeat violent offender ("RVO") specification and two firearm specifications. Appellant stipulated that the prior conviction that the indictment set forth was accurate and that, if he were to be convicted, the RVO specification would apply.
 {¶ 10} Appellant's trial by jury began on January 6, 2004. The jury returned verdicts of guilty on count one, aggravated robbery; count two, felonious assault; and count six, attempted murder. The jury also returned verdicts of not guilty on counts three, four, and five, all felonious assaults. On January 12, 2004, the court sentenced appellant to a prison term of ten years for aggravated robbery and the RVO stipulation, and three years for the gun specification, which merged for the purpose of sentencing, to run prior to and consecutive to the ten years and an additional one year to run consecutive based on the RVO specification. Therefore, appellant received fourteen years in total as a result of the aggravated robbery conviction.
 {¶ 11} For attempted murder, appellant received another fourteen-year sentence that is to run concurrent to the sentence imposed for aggravated robbery. Appellant received ten years for the conviction and three years for the gun specification to run prior to and consecutive to the ten years and an additional one year to run consecutive based on the RVO specification. The court also ordered appellant to serve five years post-release control when his sentence concludes.
 II. {¶ 12} Appellant's first assignment of error states the following: "Appellant's right to due process was violated when the trial court allowed the state to introduce evidence of a witness' pretrial identification from a photographic array without introducing the photographic array or testimony from the officer who administered it and because the same witness was unable to identify appellant at trial."
 {¶ 13} We find that the trial court acted properly and did not err in admitting evidence of the pretrial photographic identification. Appellant argues that the trial court should not have been allowed to introduce evidence from a photographic array in the manner in which it did. He further argues that Neil v.Biggers (1972), 409 U.S. 188 applies; however, we do not findNeil to be relevant to the specific facts in the case at bar.
 {¶ 14} Neil v. Biggers is a United States Supreme Court case holding that convictions based on eyewitness identificationat trial stemming from impermissibly suggestive pretrial identification procedures which give rise to a very substantial likelihood of irreparable misidentification must be set aside. In the case at bar, during the trial, no eyewitnesses identified appellant as the shooter. Appellant admitted this in his brief, when he stated the following: "In this case none of the four eyewitnesses could identify appellant as the man who shot them on February 22, 2003 at trial." (Emphasis added.)
 {¶ 15} Appellant failed to demonstrate that the conviction was "based on any eyewitness identification at trial." In fact, appellant's conviction was based on the evidence given at trial, such as appellant's lack of credibility, the presence of his van at the crime scene during the time period in question, his physical characteristics, eyewitnesses, and descriptions of his clothing.
 {¶ 16} In addition, appellant failed to cite any case law to support his contention that the state is required to introduce the photographic array, that the officer who administered the photographic array is required to testify, or that the witness who selects a photograph from an array must identify the person in the picture at trial. In fact, this court previously found that a defendant may proffer into evidence other photographs that were part of an array. See State v. Crosby, Cuyahoga App. No. 581
 {¶ 17} 68, 1991-Ohio-1164. In addition to appellant's misplaced reliance on Neil v. Biggers, we find that appellant failed to show that the pretrial identification was suggestive.
 {¶ 18} Even assuming arguendo that appellant's conviction was based on eyewitness identification at trial, appellant failed to demonstrate that the challenged identification testimony was inadmissible. Appellant contends that the array was suggestive because Taylor was only looking for an indication of glasses, and appellant's photograph was the only one with marks on the nose. Eyewitnesses frequently rely on a single characteristic or two when pointing out a potential suspect.
 {¶ 19} The Supreme Court of Ohio applied the totality of the circumstances test and found that a pretrial identification procedure using only a single photograph of the defendant did not create a substantial likelihood of misidentification. State v.Wells, Cuyahoga App. No. 64575, 1994-Ohio-354.
 {¶ 20} Even if an identification procedure utilized was suggestive, as long as the identification itself is otherwise reliable, the identification is admissible. In determining whether the identification itself is admissible, the court must consider the totality of the circumstances. Although the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the subsequent in-court identification. Reliability is the linchpin in determining the admissibility of identification testimony. The factors affecting reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Thus, although the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is admissible. Id. Appellant did not proffer sufficient reasons in the case at bar for us to find that the pretrial identification was suggestive. The challenged identification was, therefore, reliable and admissible.
 {¶ 21} Furthermore, appellant did not move to suppress the evidence he alleged violated his constitutional due process rights, therefore waiving any objections he was required to make before trial. Where an accused fails to object timely to testimony at trial, he waives any such error related thereto. SeeState v. Crosby, Cuyahoga App. No. 58168, 1991-Ohio-1164.
 {¶ 22} Appellant's first assignment of error is overruled.
 III. {¶ 23} Appellant's second assignment of error states the following: "The trial court erred by denying appellant's motion for acquittal under Crim.R. 29 because the state presented insufficient evidence." Appellant's third assignment of error states the following: "The convictions were against the manifest weight of the evidence." Because of the substantial interrelation of appellant's second and third assignments of error, we shall address them together in the section below.
 {¶ 24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 25} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 26} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Issa (2001), 93 Ohio St.3d 49, 67; see, also, State v. Thompkins, supra.
 {¶ 27} The proper test to be used when addressing the issue of manifest weight of the evidence is set forth as follows:
{¶ 28} "Here, the test [for manifest weight] is much broader.The court, reviewing the entire record, weighs the evidence andall reasonable inferences, considers the credibility of thewitnesses and determines whether in resolving conflicts in theevidence, the [fact finder] clearly lost its way and created sucha manifest miscarriage of justice that the conviction must bereversed and a new trial ordered. * * *"
 {¶ 29} State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526, at p. 8, quoting State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Tibbs v. Florida (1982),457 U.S. 31, 72 L.Ed.2d 652, 102 S.Ct. 2211.
 {¶ 30} The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore at p. 8, citing Martin.
 {¶ 31} It is with the above standards in mind that we now address appellant's second and third assignments of error. There is nothing in the record demonstrating that the evidence in this case is anything but legally sufficient to support the jury verdict. Furthermore, there is nothing in the record suggesting that the trial court clearly lost its way and created a miscarriage of justice requiring reversal of appellant's conviction.
 {¶ 32} To the contrary, the evidence in the record demonstrates that the trial court acted properly regarding the evidence presented. For example, there is sworn testimony in this case that appellant fired shots from a handgun directly at Sellers during an altercation in Sellers' vehicle. The gun was fired approximately seven to eight times, and the spent cartridges were found on the ground after the shooting. The driver's-side car window was shattered, and the victim's coat received a bullet hole as a direct result of the shooting.
 {¶ 33} In addition to the testimony presented, the State of Ohio ("State") put several pictures demonstrating the extent of the damage into evidence. Based on the evidence presented at the trial, as well as the lower court's review of that evidence, we find appellant's second and third assignments of error to be without merit. We find that the State did indeed present sufficient evidence to support appellant's convictions. Furthermore, we find that the convictions were not insufficient nor were they against the manifest weight of the evidence.
 {¶ 34} Appellant's second and third assignments of error are overruled.
 IV. {¶ 35} Appellant's fourth assignment of error states the following: "Appellant's sentence is contrary to law because the trial court failed to place on the record the findings and reasons required to lawfully impose maximum sentences and/or to lawfully impose additional time under R.C. 2929.14(D)(2)."
 {¶ 36} R.C. 2929.14 governs basic prison terms; more specifically, R.C. 2929.14(C) states the following:
{¶ 37} "Except as provided in division (G) of this section orin Chapter 2925. of the Revised Code, the court imposing asentence upon an offender for a felony may impose the longestprison term authorized for the offense pursuant to division (A)of this section only upon offenders who committed the worstforms of the offense, upon offenders who pose the greatestlikelihood of committing future crimes, upon certain major drugoffenders under division (D)(3) of this section, and upon certainrepeat violent offenders in accordance with division (D)(2) ofthis section."
 {¶ 38} (Emphasis added.)
 {¶ 39} In addition, R.C. 2929.19(B)(2)(d) requires the court to give its reason for imposing the maximum term. The purpose of recorded findings is to "confirm that the court's decision making process included all of the statutorily required sentencing considerations." State v. Edmonson (1999), 86 Ohio St.3d 324,327.
 {¶ 40} In the case at bar, the trial court imposed the maximum possible prison sentence on counts one and six and then attempted to impose an additional year on each count under the repeat violent offender specifications.[2] In order for the trial court to properly impose this additional time, it must comply with the requirements of R.C. 2929.14(D)(2)(b), compelling the court to make certain findings on the record. R.C.2929.14(D)(2)(b) states the following:
{¶ 41} "(b) If the court imposing a prison term on a repeatviolent offender imposes the longest prison term from the rangeof terms authorized for the offense under division (A) of thissection, the court may impose on the offender an additionaldefinite prison term of one, two, three, four, five, six, seven,eight, nine, or ten years if the court finds that both of thefollowing apply with respect to the prison terms imposed on theoffender pursuant to division (D)(2)(a) of this section and, ifapplicable, divisions (D)(1) and (3) of this section:
 {¶ 42} "(i) The terms so imposed are inadequate to punishthe offender and protect the public from future crime * * *.
{¶ 43} "(ii) The terms so imposed are demeaning to theseriousness of the offense, because one or more of the factorsunder section 2929.12 of the Revised Code indicating that theoffender's conduct is more serious than conduct normallyconstituting the offense are present, and they outweigh theapplicable factors under that section indicating that theoffender's conduct is less serious than conduct normallyconstituting the offense."
 {¶ 44} (Emphasis added.)
 {¶ 45} Although appellant may have stipulated to the RVO specification prior to trial, he disputed the facts relative to the findings that would result in maximum sentences at his sentencing hearing. In the case sub judice, the trial court failed to make the required findings required under R.C.2929.14(C) and (D)(2) to impose the maximum sentence. Therefore, the sentence is contrary to law.
 {¶ 46} Indeed, the state conceded in its brief that "the trial court failed to place on the record the findings and/or reasons for imposing the maximum sentences, pursuant to R.C.2929.14(C) and/or R.C. 2929.19(B)(2)(d), and/or R.C.2929.14(D)(2)(a), and additional time, pursuant to R.C.2929.14(D)(2)(b)(i)-(ii)." The state further conceded in its brief that "the maximum sentence for the aggravated robbery and attempted murder convictions and additional one-year sentences for the repeat violent offender specifications, as reflected in the record, are clearly and convincingly contrary to law. R.C.2953.08(G)(2)(b)."[3]
 {¶ 47} Appellant's fourth assignment of error is sustained.
 V. {¶ 48} Appellant's fifth assignment of error states: "Appellant's sentence is contrary to law because the trial court failed to consider whether it is consistent with sentence imposed for similar crimes committed by similar offenders as required by law."
 {¶ 49} Based on the disposition of appellant's fourth assignment of error, appellant's fifth assignment of error is moot. App.R. 12(A)(1)(c).
Judgment affirmed in part, reversed in part, and remanded for resentencing.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Kilbane, J.,* Concur.
* Judge Anne L. Kilbane concurred in this Journal Entry and Opinion prior to her death on November 23, 2004.
[1] Tr. 4-5.
[2] Tr. 434-435. The Court: "* * * Now the Court is required to accept these findings and does so and sentences you this morning as follows. Relative to Count 1 of the indictment, due to the RVO specification that has been stipulated to, you are found, under the facts of this case and the facts of the prior case, to be a repeat violent offender. You therefore are sentenced in Count 1 of the indictment to Lorain Correctional Institute for a period of ten years. Prior to and consecutive to that sentence, you will serve an additional three years on the gun specification which merged for purpose of sentencing. In addition, pursuant to the RVO specification, you will serve an additional consecutive period of incarceration of one year, for an aggregate of 14 years. Relative to Count 6 of the indictment, it likewise is the sentence of the court that the Defendant serve ten years at Lorain Correctional Institute. Prior to and consecutive to that sentence, you'll serve three years at Lorain Correctional on the gun specification. Consecutive to that sentence, you will serve a one-year period of incarceration based on the RVO specification, for an aggregate of 14 years. That sentence will be concurrent to the sentence just imposed in Count 1 of the indictment."
[3] Appellee's brief, p. 28.